IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Clarence T. Fox, Jr., ) | Case No. 8:12-421-TMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Warden Darlene Drew; ) | |
| Carl Dozier, Trust Fund Supervisor; ) | |
| Luis Berrios, Clinical Director; ) | |
| Linda McDannold, Health Services ) | |
| Administrator[1]; Dawn Allender, Material ) | |
| Handler Supervisor[2], ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on a motion to dismiss or, in the alternative, for summary judgment filed by Defendants [Doc. 90] and a cross-motion for summary judgment filed by Plaintiff [Doc. 98]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in pro se cases and to submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY**

Plaintiff, proceeding pro se, filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), on February 16,

---

[1] Plaintiff originally identified Linda McDannold as L. MacDannold [Doc. 1 at 1, 2], but later clarified this defendant as Linda McDannold [Docs. 76 at 1, 3; 92 at 1, 4].

[2] Plaintiff originally identified Dawn Allender as D. Allender [Doc. 1 at 1, 2], but later clarified this defendant as Dawn Allender [Docs. 76 at 1, 3; 92 at 1, 4].

2012.[3] [Doc. 1.] Plaintiff amended his complaint on August 21, 2012 [Doc. 76] and again on October 12, 2012 [Doc. 92].[4] On October 11, 2012, Defendants filed a motion to dismiss the amended and second amended complaint or, in the alternative, for summary judgment. [Doc. 90.] On October 12, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 93.] Plaintiff filed a response in opposition to Defendants' motion on November 16, 2012 [Doc. 97], and Defendants filed a reply on November 29, 2012 [Doc. 103]. On November 16, 2012, Plaintiff filed a cross-motion for summary judgment. [Doc. 98.] Defendants filed a response in opposition to the motion on January 17, 2013. [Doc. 113.] The motions are now ripe for consideration.

## BACKGROUND

Plaintiff alleges that in 1987, before his incarceration, he fractured all bones in his left foot, resulting in the loss of an arch in his left foot. [Doc. 92 at 5 ¶ 13.] As a result, an orthopedic surgeon advised Plaintiff to wear shoes with moderate arch support to alleviate pain. [*Id.*] Plaintiff alleges he was later prescribed shoes with moderate arch support. [*Id.* at 5 ¶¶ 15–16.] From 1997 through 2011, Plaintiff satisfied his medical treatment at his own expense, and the Bureau of Prisons allowed Plaintiff to purchase boots with moderate

---

[3] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on February 16, 2012. [Doc. 1 (complaint signed by Plaintiff on February 16, 2012).]

[4] Although Defendants contend Plaintiff did not seek leave to file the first amended complaint, a review of the docket indicates Plaintiff filed a motion to amend the complaint on August 3, 2012 [Doc. 63], to which Defendants responded they did not object [Doc. 70]. Accordingly, the Court granted Plaintiff's motion to amend as unopposed on August 21, 2012, and directed the Clerk to file the amended complaint. [Doc. 75.]

2

arch support through the commissary or have the boots purchased by Plaintiff's family. [*Id.* at 5–6 ¶ 17.]

Plaintiff alleges Defendants Carl Dozier ("Dozier") and Dawn Allender ("Allender") prohibited Plaintiff from purchasing a pair of boots with moderate arch support on January 1, 2011, even though they had previously allowed him to purchase boots to satisfy his medical condition. [*Id.* at 6 ¶ 18.] Plaintiff further alleges Defendant Darlene Drew ("Drew") allowed Dozier and Allender to restrict Plaintiff's ability to purchase boots even though Drew knew Plaintiff required shoes with moderate arch support. [*Id.* at 6 ¶ 20.] Plaintiff alleges Defendants Luis Berrios ("Berrios"), Linda McDannold ("McDannold"), Drew, Dozier, and Allender were aware that inmates are required to wear boots and cannot wear any other shoes during normal working hours or to visitation. [*Id.* at 6 ¶ 20.] Further, Plaintiff alleges Drew, Berrios, and McDannold knew Plaintiff had a fallen arch in his left foot requiring boots with moderate arch support, and they failed to provide Plaintiff with boots and required Plaintiff to satisfy his medical condition at his own cost. [*Id.* at 6 ¶ 21.]

Plaintiff contends that, as a result of Defendants' actions, Plaintiff continues to experience pain in his left foot, along with the risk of losing mobility in his left foot. [*Id.* at 7 ¶ 26.] Plaintiff seeks $25,000 in compensatory damages against each defendant, punitive damages in the amount of $100,000 against each defendant, and all other relief deemed just and proper. [*Id.* at 7 ¶¶ 26–28.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under *Bivens***

In *Bivens*, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of *federal* constitutional rights. 403 U.S. at 389. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983[5]; federal officials cannot be sued under § 1983, however, because they do not act under color of *state* law. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v.*

---

[5]Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.

*Brennan*, 511 U.S. 825 (1994); *Mitchell v. Forsyth*, 511 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443–44 (4th Cir. 1988). To establish a claim under *Bivens*, a plaintiff must prove two elements: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States and (2) the defendant did so under color of federal law. *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted) (setting forth requirements for a § 1983 claim under color of state law); *see also Bivens*, 403 U.S. at 389 ("In [a previous case], we reserved the question whether violation of [the Constitution] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct. Today we hold that it does.").

**Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court "may consider documents attached to the complaint . . . so long as they are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

In their motion to dismiss or, in the alternative, for summary judgment, Defendants first argue they are entitled to sovereign immunity and, accordingly, Plaintiff's claims should be dismissed for lack of subject matter jurisdiction. [Doc. 90 at 2–4.] Additionally, Defendants argue Plaintiff's amended complaint fails to comply with Rule 8(a)(2) because it fails to make specific allegations against Defendants that states a constitutional violation [*id.* at 8–12]; Plaintiff's amended complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) [*id.* at 12–13]; McDannold is entitled to absolute immunity under the terms of the Public Health Service Act [*id.* at 13]; Defendants are entitled to qualified immunity [*id*. at 14–15]; Plaintiff fails to state a violation of the Eighth Amendment as it relates to his medical care [*id.* at 15–22]; negligence/medical malpractice does not state a valid constitutional claim [*id.* at 22–23]; Drew, Dozier, and Allender, as non-medical prison officials, were entitled to rely on the professional judgment of medical staff and may

not be held personally liable for decisions made by medical personnel [*id.* at 23–26]; supervisory liability does not attach for Drew [*id.* at 26–27]; and Plaintiff cannot satisfy the Prison Litigation Reform Act's physical injury requirement [*id.* at 28–29].

**Sovereign Immunity**

As an initial matter, the Court notes *Bivens* claims for damages are not actionable against the United Sates, federal agencies, or public officials acting in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend a *Bivens* remedy to federal agencies); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (noting "a *Bivens* action does not lie against either agencies or officials in their official capacity"). However, sovereign immunity does not bar damages actions against federal officials in their individual capacities for violation of an individual's constitutional rights. *Gilbert v. Da Grossa*, 756 F.2d 1455, 1459 (9th Cir. 1985) (citing *Davis v. Passman*, 442 U.S. 228 (1979)). Further, sovereign immunity is not a bar to actions seeking equitable relief. *Singletary v. Fallen*, No. 0:11-543-CMC-PJG, 2012 WL 368375, at *2–3 (D.S.C. Jan. 17, 2012) (discussing relevant case and statutory law), *report and recommendation adopted by* 2012 WL 368364 (D.S.C. Feb. 3, 2012). Accordingly, to the extent Plaintiff asserts claims for damages against the Defendants in their official capacities, those claims should be dismissed, but the Court will consider Plaintiff's claims for equitable relief and Plaintiff's damages claims to the extent he has asserted such claims against Defendants in their individual capacities.

**Absolute Immunity Under the Public Health Service Act**

McDannold is entitled to absolute immunity under the terms of the Public Health Service Act, 42 U.S.C. § 233(a). Section 233(a) makes the Federal Tort Claims Act the exclusive remedy for legal actions against members of Public Health Service "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . , by any commissioned officer or employee of the Public Health Service while acting within the scope of his office of employment." *Hui v. Castaneda*, 559 U.S. 799 (2010). As the Supreme Court observed in *Hui*, "proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period." *Id.* at 1854. McDannold avers she is a registered nurse in the United States Public Health Service. [Doc. 90-9 at 1 ¶ 1.] Accordingly, McDannold is entitled to absolute immunity.

**Deliberate Indifference to Medical Needs**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under *Bivens* because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either

known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*,

*Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Assuming without deciding that Plaintiff can establish his medical needs are sufficiently serious, he has failed to establish a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind. With respect to Plaintiff's allegation that he was not provided boots with proper arch support, the evidence indicates Plaintiff was offered a pair of shoes to purchase that provided the medically necessary arch support but Plaintiff declined to purchase those shoes. Plaintiff admits that Berrios and McDannold "identified athletic shoes in the commissary for Plaintiff to satisfy his medical condition." [Doc. 97-1 at 2 ¶ 7.] Likewise, the evidence confirms Defendants made available to Plaintiff shoes with moderate arch support, as recommended by the specialist, for purchase from the institution's commissary. [Docs. 90-5; 90-6; 90-7 at 4 ¶ 14; 90-13.] Plaintiff, however, complains he was not allowed to purchase the boots he was previously allowed to purchase and that the athletic shoes he was permitted to purchase did not meet the facility dress code unless Plaintiff had a soft shoe pass. [Doc. 97-1 at 2 ¶¶ 4-5 (indicating FCI Bennettsville's dress code prohibits athletic shoes at certain times unless the inmate possesses a soft shoe pass, which Plaintiff did not possess).] However, Plaintiff has not alleged he requested and was denied a soft shoe pass, and Defendants aver he would have been allowed to wear soft shoes if the shoes were selected for medical reasons. [Docs. 90-8 at 3 ¶ 8; 97-25 at 7; 97-26 at 6.]

Defendants have adequately addressed Plaintiff's medical need for a shoe with moderate arch support; however, the shoe is not the boot Plaintiff desires. Plaintiff's disappointment in the suggested shoe, however, does not translate to deliberate indifference on the part of any Defendant. As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice. *See, e.g., Jackson*, 846 F.2d at 817. Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants acted with deliberate indifference.

**Non-Medical Personnel**

To the extent Plaintiff attempts to raise a claim of medical deliberate indifference against any non-medical personnel defendant, his claim must fail. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deemed necessary and appropriate for the prisoner. *See id.* Plaintiff has made no showing that any non-medical personnel defendant engaged in the type of conduct required by controlling case law to establish an Eighth Amendment medical claim of deliberate indifference.

**Supervisory Liability**

To the extent Plaintiff bases his claims against Drew on the theory of supervisory liability, his claims are without merit. First, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions. *See Iqbal*, 556 U.S. at 693 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."). Moreover, even if supervisory liability remains in *Bivens* actions, because there is no doctrine of respondeat superior in *Bivens* and § 1983 claims, *id.* at 676–84, a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under *Bivens* or § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted).

In this case, Plaintiff has failed to establish a claim based on a theory of supervisory liability. Plaintiff has failed to show Drew acted with deliberate indifference with respect to Plaintiff's medical needs. Further, as discussed above, Plaintiff's medical needs were addressed and, although Plaintiff may disagree with the treatment he received, Defendants were not deliberately indifferent to his medical needs. Moreover, Plaintiff has failed to establish a causal link between any action or inaction on the part of Drew and the alleged violation of Plaintiff's constitutional rights because Plaintiff failed to demonstrate Drew's subordinates were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has failed to state a claim under a theory of supervisory liability.

**Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v.*

*Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights.  Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion to dismiss or, in the alternative, for summary judgment be GRANTED and Plaintiff's cross-motion for summary judgment be DENIED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

July 11, 2013
Greenville, South Carolina